RAWLS, Acting Chief Judge.
In this class suit brought by Mainor and others, all of which own property in Bagdad Subdivision, the plaintiffs have appealed from an adverse summary judgment finding that they had no standing to enjoin the Hobbies from fencing in a portion of Simpson Street and an irregular strip of land bordering Blackwater Bay.
Two questions are posed: 1. Are appellants proper parties to prosecute an action to enforce either a public or private right to use the street? 2. Did the 1951 quiet title action operate to vest title in defendants’ predecessors ?
The amended complaint alleged: About 1872 Simpson and Company platted Black-water Subdivision, now known as Bagdad Subdivision, which is a portion of Section 14, Township 1 North, Range 28 West, in Santa Rosa County. Both the plaintiffs and defendants derived their titles from Simpson and Company. Lots were sold by number and reference to the unrecorded plat which designated an irregular strip of land bordering the bay as “Bay Street.” It is alleged that this original plat designated the lots and blocks in the same manner as shown by the revised plat of Bagdad of 1912 by C. H. Overman except the revised plat omitted the words “Bay Street.” The original plat was an offer to dedicate the strip designated as Bay Street to the public, and the selling of lots to the plaintiffs’ predecessors with reference to the original plat was a dedication to the purchasers and to the public of the strip for purposes of a roadway and a recreation area for swimming, picnicking, etc. The owners of lots in the subdivision and the public have used the strip as a roadway, park, and recreation area in excess of sixty years. Nevertheless, the Hobbies and other defendants have recently fenced in a portion of Simpson Street and Bay Street — the irregular strip bordering the Bay — and have denied the owners in the subdivision and the public access to the roadway, park and picnic area. It is alleged that the right to use the area is a very valuable property right to the owners in the subdivision.
Among the exhibits is the 1912 revised plat which reflects that the subdivision borders Blackwater Bay. Three streets— Water, Simpson and Forsyth — one, fifty feet wide; and two, sixty feet wide, run through the subdivision toward the bay and terminate at the irregular strip bordering the bay. The lot owned by plaintiff, Sally McCurley Mainor, abuts “Bay Street” and each deed in the line of title from 1872 to date describes said lot as abutting “Bay Street.”
The complaint sought to enjoin the defendants from fencing the area and denying the public access to Bay Street.
The defendants, Eugene Hobbie and his wife, defended on the grounds that their predecessors had quieted title to this strip in 1951 and moved for summary judgment on the complaint, answer and exhibits. The trial court reviewed the file in the 1951 quiet title suit and entered summary judgment for the defendants, Hobbies.
It should be borne in mind that this is not an action to enjoin city, county or state officials having authority to close a street or to reject a dedication from exercising that authority. Such an action can only be maintained by those individuals who would sustain an injury materially different in kind and degree from that of the public at large.[1]
The amended complaint alleged sufficient facts to establish a private and a public right to use both Simpson and Bay Streets. The Supreme Court in City of *205 Miami v. Florida East Coast Ry. Co.,[2] adopted the following quotation from 3 Dill.Mun.Corp. (5th Ed.) § 1086, pp. 1739-1740, to wit:
“ ‘Decisions recognize a clearly defined distinction between the rights acquired by the public through dedication effected by platting and sale, and the private rights acquired by the grantees by virtue of the grant or covenant contained in a deed which refers to a plat, or bounds the property upon a street through the grantor’s lands. These decisions adopt the view that where lands are platted and sales are made with reference to the plat, the acts of the owner in themselves merely create private rights in the grantees entitling the grantees to the use of the streets and ways laid down on the plat or referred to in the conveyance.
But these rights are purely in the nature of private rights founded upon a grant or covenant, and no public rights attach to such streets or lands until there has been an express or implied acceptance of the dedication, evidenced either by general public user, or by the acts of the public authorities. In this view, the making of the plat and the sale of lands with reference thereto are merely evidence of an intent to dedicate, which like every other common law dedication, to be made complete and carried into effect so as to create public rights, must be accepted and acted upon by the public.’ ”
and it was held:
“ * * * a proffered dedication of a park may as to the public be revoked before its acceptance; and the public then acquires no rights therein. A revocation of a proffered dedication of a park does not destroy the private rights of owners of lots who had already bought with reference to a plat showing the dedicated park, though such private rights would be subject to a proper application of the rules of repose and estoppel as well as of the police power.”
The act of dedicating one’s property to public use need not be by formal act but may be by parol, by conduct of the owner, by written grant, affirmative acts, or permissive conduct. The only requirement for a common law dedication is a clearly indicated intention on the part of the owner.[3]
After a common law dedication is once accepted by the public, it is irrevocable by the owner and his successors in title except with the consent of the public and of those persons who have vested rights in dedication.[4]
The allegations of this complaint, if proven, reflect that the appellants have a private right to keep the streets and public areas open, and the public has accepted the dedication by general public user of long standing. We have grave doubts whether these appellants must show a special injury to entitle them to maintain this class suit against a successor in title to the owner who originally platted and dedicated the public areas. This point was not argued and will not be decided here because the complaint and record in this cause show a special injury which is peculiar to these appellants.
The plat in the record reflects that the acts of the defendants in fencing the irregular strip (Bay Street) not only denied the right of passage which is common to all but it also in effect fenced off Black-water Bay and the adjoining recreation area. In this country, and particularly in this State, close proximity of and direct access to navigable waters gives property an enhanced value. Although the amended *206 complaint could have been phrased more specifically, it does contain an allegation that the right of property owners in the subdivision to the use and enjoyment, of the area for recreation, swimming, etc. is an extremely valuable property right, and this allegation sufficiently describes that enhanced value which the nearness of the bay and direct access thereto renders to their property. The deprivation of the park and direct access to Blackwater Bay could materially reduce the value of their property, thereby causing them damage different in degree and kind from that of the public at large.[5] We conclude that the appellants as individuals and as a class have the necessary standing to enforce either the private or public right.
Therefore, the question is whether the rights thus alleged were cut off by the 1951 quiet title suit instituted by defendants’ predecessors in title. In that action neither a public body having authority over streets nor any of the appellants herein were named as defendants and the nature of their claims was not stated. Key v. All Persons Claiming Any Estate, etc.[6] reviews a number of similar cases and reaffirms the principle that quiet title suits “ ‘will lie against known defendants to quiet against a cloud of a known or an unknown nature; and against unknown defendants to quiet against a cloud of a known nature; but a bill seeking only to quiet a cloud, the nature and existence of which is wholly unknown, as against defendants, who are also wholly unknown, does not present a justiciable matter under this statute in its present form. Such a bill neither advises the unknown defendants of the nature of the case they are called upon to defend, nor the court what decree it shall render, supposing the bill to be true.’ ”
We conclude that the quiet title suit did not set in repose the alleged rights of these appellants. The summary judgment is hereby set aside and the cause remanded for further proceedings.
Reversed.
JOHNSON and SPECTOR, JJ., concur.

. Thomas v. Wade, 48 Fla. 311, 37 So. 743 (Fla.1904); Robbins v. White, 52 Fla. 613, 42 So. 841 (Fla.1907); and 16 Fla.Jur., Highways, Streets & Bridges § 89, and cases cited therein.

. City of Miami v. Florida East Coast Ky. Co., 79 Fla. 539, 84 So. 726 (Fla.1920).

. Weber v. City of Hollywood, 120 So.2d 826 (Fla.App.2d, 1960), and City of Palmetto v. Katsch, 86 Fla. 506, 98 So. 352 (Fla.1923).

. City of Miami v. Florida East Coast Ry. Co., 79 Fla. 539, 84 So. 726 (Fla.1920).

. Key v. All Persons Claiming Any Estate, etc., 160 Fla. 723, 36 So.2d 366, 369 (Fla.1948).

. Brown v. Florida Chautauqua Ass’n, 59 Fla. 447, 52 So. 803 (Fla.1910).